July 15, convinced he says, which in this case was its own rule against retaliatory conduct. But is there not an element in terms of establishing constructive discharge that your client or a person, the alleged victim here, had no other choice but to resolve it? And if you agree that's an element, what in all of the information you've given us, given all of the inferences, excepting everything you say is correct and true, goes to the point that she had no other choice but to resolve it? Because she had already filed three grievances before she left that the fact that she'd signed the paper saying that she could be deployed anywhere doesn't relieve the government of its obligation not to have created this retaliatory set of circumstances Why didn't she have a choice other than to resolve it? Firstly, with respect to the grievances, my understanding from the state of the record is that there was at least one grievance that wasn't pursued to conclusion. She had filed it, but she hadn't received a final response. Right. So there was a pending grievance. She hadn't sought, even if that were... Right. I mean, I would argue futility there because she filed grievance after grievance for many years and it was more than clear that no one was going to change their mind about this or that she'd be re-stationed. But the reason why this court should not consider that she should just suck it up and move is the same reason why this court decided in Carmichael that naval service members should not just agree to use a social security number, I.O.D. number that they objected to on religious grounds. But Ms. Lorso, is that really the only two choices she had? Was it to suck it up and move? Or to resign? I believe so. Well, doesn't that require us to decide that the grievance procedure had totally broken down and there's no meaningful way for her to grieve this? Well, she had already grieved it through two levels and been denied. So the question is whether some third party, who was never named because she sent her third grievance out... Would she grieve this transfer? Yes. Through level one, through level two, she filed level three and she didn't get an answer. And then her termination date arrived and eventually they sent her a letter saying, we're not processing level three because you're no longer a naval service member. So your argument hinges on a conclusion that there was nothing further with that grievance procedure that could mean to have been done. Yes. And to conclude to the contrary, there was at least some other alternative besides resignation. Well, I think that you'd have to conclude there was a meaningful possibility that someone named third party that was higher than the first two, who were already up to the level, the back east level, was going to reach a different conclusion. And there were also efforts by her to contact her congressman. I mean, she wrote a letter to everybody that she could think of. So the chances that this third grievance was going to alter the course of things was nil. Well, we can partly conclude that. I mean, every negotiated agreement, collective bargaining agreement, possibly in the country, has a step grievance procedure leading to arbitration. But they usually have several steps. So you're asking us to say that every subsequent step in a grievance procedure we should conclude as a matter of law is meaningless? No, not as a matter of law, but as a matter of the facts in this case. I mean, she had gone through three levels of grievance on numerous things in here, including her exclusion from clinical practice, her non-transfer with the rest of all the people in her unit. I mean, the retaliatory things that set her up to be in this redeployment situation, she had grieved. She was a member of a protected class, and that was the class of people who had done their duty and tried to report misconduct. And so she was in the protected class of people who had sort of whistleblown in this way. And now it seems that... Well, let's see. But just to ask you about that, because it seems you spend a lot of your grief talking about the conduct before the transfer and using that as sort of retaliation to put her in this protected class. The thing that seems a little incongruous about that in reading it is the ultimate case here, the constructive discharge, the reason that she was under so much duress yet to leave was because she was being placed out of that environment. I mean, I was reading it and sort of thinking, well, having read how terrible and allegedly terrible the life was for her in her state duty station in Alaska, I thought the conclusion was going to be that it was duress to keep her there. But indeed, what you're complaining about is they were taking her out of that stressful, duressful situation. Well, to her, I mean, it was adding to her duress because no other person in her department was being transferred out of state. Only she was. And the only reason why she was in that position was that the guys in her department got together and had a meeting and made jokes about how they were going to send her as far away as possible. Now, in the sexual harassment context, the federal courts have said, there's an IRS case in the Ninth Circuit that I can't recall the citation to, but it's not appropriate to move the victim to solve the problem. And in this case, even though moving the victim could provide some relief. So in this case, it can't be considered a benefit to her that she was being transferred to another state which would require her and her entire family to be uprooted and moved. Do you want to reserve the balance of your time? Yes, sir. All right, fine. Let's hear from the governor. Good morning, Your Honors. I'm Doug Nichols with the United States, and I represent the Public Health Service in this case with the United States. May it please the court, we believe that the judgment of the court of federal claim should be affirmed because the record supports the decision of the court that, in fact, Dr. Murphy's resignation was voluntary. So you agree that we have to decide this on the sum of judgment funds? Yes, Your Honor, we believe that's the case. Are there any cases that you can cite to us where this court might feel has transformed from 12B1 to 12B6? There are two cases where 12B1 has been transformed, and there's one where it has not. OK. I believe it was 12B6, which was because there was matters not outside of the record reviewed from the research. One is Banks v. Garrett, and the other one, the citation there is 901 Fed 2nd, 1084. 1087 is the jump site. And Moden, a recent case, 404 Fed 2nd, 1335, which was a tax case from the Court of Federal Claims, where the Court of Appeals found that the trial court did rule for the government to dismiss under 12B1, but determined that that was erroneous, and it really was pursuant to 12B6. So do you have any other cases? No, there are none. I have a question, if I may. If we were to assume here for the sake of discussion that the question is whether the grievance process would have produced some different result if it pursued the conclusion, that that was an important issue. Is that an issue that Ms. Berkey should have been entitled to get some discovery on or not? Not in this case, Your Honor, we believe. And that's primarily because it deals with an assignment of a member of the Uniformed Services. Absent an allegation of procedural error, in this case, the procedural error alleged is that the agency did not violate standards of conduct and ethical guidelines because she was not treated, quote, unquote, fairly, I believe it was in the library. But in that case, when it comes to an assignment of someone in the military, that allegation always could be made by someone in the military that they weren't treated fairly because another peer in the barracks was reassigned while someone else wasn't. That's not exactly what I'm asking. You don't disagree, do you, that the test set forth in the Christie case is a relevant test for us to be looking at, do you? No, we don't agree with that. According to that three-part test, one of the questions associated with whether resignation is voluntary is whether the circumstances permitted no other alternative, right? Yes. So if that's something we should look at, and we're looking at this as a Rule 56 matter, the question I'm posing to you is, was there something to be gained by the claimant getting to take discovery on that point? Or is there nothing to be gained because it's a counterfactual and so there's no evidence to find it? You see what I'm trying to find out, whether the government thinks, or what the government position is with respect to whether Rule 56 requires some discovery here on this question of other alternatives. Well, not in this case, primarily because the Christie case is conjunctive. Let's even assume that there's possible discovery on that point. She still can't demonstrate that the government also violated the other two tests in Christie. Because there clearly was another option here. And as was discussed, and Dr. Murphy was informed by Captain Canton, saying, if you go, when you do go to your reassignment, you continue the grievance process regarding your assignment. That's at the record at 663. Well, let me ask you hypothetically. Let's assume she had already exhausted the grievance procedure, had lost the grievance procedure. Would you think the result in this case ought to be different? Not in this case, because there has not been any showing that there's been a procedural error. And this is especially true given the fact that it deals with a military assignment. And the case law, while it's not true, there's no case law directly on point. But even if it was clear here, she would hear, and she could show there was some procedural error in the transfer. They didn't follow the right procedures. They didn't sign the right form. And let's assume also that she's exhausted the grievance procedure. The grievance is filed. Would it still be the government's position that it still was not a constructive discharge? Because she still had a choice other than to leave voluntarily. There was no more intervention. Yes, in this case, because the underlying basis of her complaint with the government deals with an assignment. It's not like Carmichael, where Carmichael's choice was, I'm going to be forced to leave the service unless I agree to put a social security number, which is against my religious convictions, on a form. Dr. Murphy, in fact, was encouraged by the government to stay in service. The government didn't write any terms for her resignation. They actually encouraged her to accept the reassignment. But I don't understand how that distinguishes. I mean, they didn't make her leave the service, but they were relocating her to a different job. Why isn't that comparable to the Carmichael leaving the service? I mean, if you're saying she had a choice other than to leave, why isn't that true in the Carmichael case? He could have left and then grieved it or pursued his relief, having resigned it. He didn't have to resign or do that. That's true of Carmichael. But the action that Carmichael was complaining of directly affected his resignation. That's not the case here. In this case, she could have followed the grievance process and still moved to her new duty assignment. So your position, if I'm understanding it right, is that for members of the uniformed service, declining a reassignment can never be viewed as a wrongful coercive government action. Is that the bottom line? I don't want to be tied to never, but for the most part, I would say as close to never as I could ever say never, Your Honor. That's very true. And do you have authority for that? I'm sure you can make sound public policy arguments for it, but I'm wondering if you have some authority for it. The case law all comes from the seminal case of Orloff v. Willoughby. There are several cases from the Vietnam Bureau of Court. Wright v. Grieser. We cited those in our brief. Lloyd v. McNamara. I'm sorry. Court Wright, of course, is the second sort of case. But we do know that there's case law on this court in the Woodward case, which involved a discharged service member prior to the old Don't Ask, Don't Tell policy for homosexual conduct. It was a First Amendment challenge that the maintenance of unit cohesion is a proper basis for reassigning someone. So in this case, let's even assume that all the allegations that Dr. Murphy set forth in our brief are true regarding the poisoned environment in Alaska. To maintain unit cohesion, the agency could reassign Dr. Murphy. And the record has not been controverted. The fact is that there was no longer a combat between Dr. Murphy and the Alaska Native Tribal Health Consortium in Alaska. She was a commissioned officer who, pursuant to her commission, did agree that she would be subject to reassignment based upon the needs of the service. The needs of the service, pursuant to a review board in Washington, 4,000 miles across the country, away from Alaska, who made that decision to determine there was a need in New Mexico. But you would concede, would you not? Let's assume it were wrongful. Let's just take it as a given that ultimately, after 10 years of litigation, somebody concludes that it was indeed a wrongful transfer. Would it still be the government's position that that doesn't change the outcome in this case because that still wouldn't have given her a basis? She still should have complied with the reassignment. That would raise it to the level of constructive discharge just because it was wrongful. In this case, she should have complied with her orders and gone. It might have been a different story if she didn't comply and was subject to a court-martial where they definitely were pursuing discharge. But in this case, the government wanted Dr. Murphy to maintain her position in the organization. And with all the other resignation cases in this court and its predecessor, that's not the case. All those other cases deal with a plaintiff who under some means is trying to be separated from government service. And in this case, the record shows that the government encouraged Dr. Murphy to stay and work through the process internally. She chose to resign and file this complaint 4 or 5 years later. In this case, the government filed a motion to dismiss, as I understand it, right after the complaint was filed, before the answer. Yes, Your Honor. I'm sorry. Now, had the government instead filed a motion for summary judgment, then clearly Dr. Murphy would have had the right to take some discovery and would have had the right to mount a defense to the motion. Not necessarily. I mean, she still would have to show under Rule 56 Act that there was a material fact and dispute regarding that assignment. And at this point- She should have requested leave to take some discovery if she felt she needed discovery on that issue before responding. Yes, assuming we wouldn't impose that, because at that point, she still has the obligation to come forward and say why she can't respond. And if it's her allegation that, I just don't believe the rationale of the decision-maker in the Surgeon General's office back in Washington, that is not enough to impose the Surgeon General's part of the assignment. She may have all kinds of reasons based on the circumstances of her separation. For one reason or another, she may feel she needs some discovery. I guess the question in my mind is that we're trying to assess whether there could possibly be any such need for discovery such that if we rule that on this record we can treat this as a summary judgment motion, I just want to be clear that we're not somehow- We know- Why give her the opportunity to make her case? We know no information, and I believe Dr. Murphy's counsel said that they believe that all the information they have is here but for something they might have discovered in depositions. But that's not the standard for being able to depose an official, especially when it comes under the umbrella of a military assignment, and especially given the law in this court regarding the presumption of regularity regarding the decisions of agency officials. Subject to your questions? All right. Thank you very much. Ms. Gars, anything in your mind? Well, I think that any presumption about the regularity of the conduct of agency officials has to be in serious question when there's affidavit evidence of a witness at a meeting of agency officials where they all got together and decided, completely separate from any normal military procedure or regulation, that they're going to vote somebody off the island, essentially. I mean, they got together and voted to try to prevent the tribe from accepting Dr. Murphy and the transfer of her- But let me ask you, and I think this is a little redundant to a question, I think Judge Jordan asked early on, which is that assume hypothetically that our view of the law in this case, the facts of this case, were that given that she had not exhausted the grievance procedure and we don't think that it was futile, I mean, there's a procedure in place and she hadn't exhausted it, that therefore we can't say that she had no other choice but to resign. What is there is a kind of information that we seek in discovery that could be futile, do we want that? It goes to that question. I guess in discovery we could try to discover whose decision that would have been and whether they would have decided any differently. But in this- Does that go to what would you be trying to establish then? That it would be futile. But I think there's substantial evidence already as to futility. I mean, this wasn't her first grievance. She filed multiple grievances, but we're not going to- I'm sorry to interrupt. My question isn't about the merits of that. I just hypothetically assume we would, on the state of the record, not what we would conclude that. Is there anything more that you can think of that would be available in discovery that goes to that issue? To the issue of the exhaustion of remedies? Yeah, well, I mean, if our conclusion is that she hadn't exhausted her grievance procedure, there's no indication, there's nothing on the record now that establishes that it would have been futile. And we think given that, she had a choice other than to resign. Is there anything in discovery that could go there? Well, I think the discovery would be oriented towards what she theoretically missed by not having had the military, which could have responded to her third grievance promptly and didn't do so, have made some kind of response. But her grievance at level two was denied by the deputy director, I think, of the agency. And she had also filed numerous EEO proceedings, which she followed all the way to the bitter end in a search in general. And she filed with the Board of Military Corrections two years ago, and they've never decided anything. So that's part of the futility. Ms. Thomas, your time has expired. Thank you very much, Mr. Bickle. The case is submitted.